# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANTONIO BUTLER,  )
  )   Civil Action No. 20 – 1172
    *Petitioner*,  )
  )
  v.  )   Magistrate Judge Lisa Pupo Lenihan
  )
MICHAEL ZAKEN,  )
  )
    *Respondent*.  )

## MEMORANDUM OPINION

Currently pending before the Court[1] is an Amended Petition for Writ of Habeas Corpus

("Petition") filed by Petitioner Antonio Butler ("Petitioner") pursuant to 28 U.S.C. § 2254.  (ECF

No. 12.)  For the reasons set forth below, the Petition will be denied and a certificate of

appealability will also be denied.

### A.  Factual Background and Procedural History[2]

In this habeas case, Petitioner challenges his judgment of sentence out of Allegheny

County at criminal docket number CP-02-CR-0005536-2010.[3]

The relevant facts presented at trial, as related by the trial court, are as follows:

> Orlando Anderson testified that on December 29, 2009, he was looking for
> a ride to visit his friend, Erica Daye, to help fix her daughter's bike.  He bumped
> into the [Petitioner] on Third Street in Pitcairn.  He asked the [Petitioner] if he
> could get a ride to Erica Daye's residence on McGinnis Street.  The [Petitioner]
> told him he'd have to ask the victim in this case, Lamont Ford, who was known as

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

[2] Respondents electronically filed as exhibits to their Answer (ECF No. 14-1) relevant parts of the state court record. The documents will be cited to by their exhibit and ECF page number as follows: "Exh. __, ECF No. 14-1, p.___."

[3] Petitioner was charged with one count each of criminal homicide, carrying a firearm without a license and persons not to possess a firearm.  (ECF 2, ECF No. 14-1, pp.21-24.)

1

"Lolo".  When the victim showed up, Anderson asked for the ride.  The victim agreed to drive Anderson to Erica Daye's residence.  All three got into the victim's vehicle.  The [Petitioner] sat in the front passenger seat and Anderson sat in the rear passenger seat.  Ford told Anderson and the [Petitioner] that he had to stop at his aunt's house before they stopped at Erica Daye's residence.  After the [Petitioner] got back in the vehicle, they left for Erica Daye's residence.  As they approached the residence, Anderson told Ford to drive on Brinton Road and turn onto Kay Street.  The three men engaged in normal conversation during the ride.  Ford and the [Petitioner] appeared "cool" with each other and there was no tension in the vehicle.  When the vehicle stopped on Kay Street, Anderson existed the vehicle.  As he just started walking away, he heard a gunshot.  He turned around and saw a number of muzzle flashes inside the vehicle.  The [Petitioner] was halfway inside the vehicle firing gunshots toward Ford.  The vehicle then drifted forward and hit another vehicle.  Anderson was still close to the shooting scene.  The [Petitioner] turned toward him and fled the scene running down Brinton Road toward Second Street.  Anderson stayed at the scene screaming for help and waited for help to arrive.  He testified that the [Petitioner] was wearing a red jacket, boots and black jeans at the time of the shooting.

Brandon Marto testified that on December 29, 2009, he was driving his pick-up truck on Brinton Road in Pitcairn, Pennsylvania just as it was starting to get dark.  According to Marto, it was dusk.  While he was driving he heard a "pop" and thought he had blown a tire.  He heard another "pop" and observed a car parked on the side of Kay street.  As he turned to look down Kay Street, he observed a man standing outside the passenger's side of the car shooting into it.  He then observed the flashes of five gunshots.  He observed another man standing outside the car on the driver's side of the vehicle.  He testified that the shooter was approximately 5-9" – 5'10" and weighed approximately 160 pounds.  At the time of the shooting, he was wearing a red, long sleeved windbreaker, jeans and boots and he had short hair.  He testified that the gun was dark in color, probably black.  As he drove by the shooting scene, he was able to observe the shooter run from the scene.

Reverend Deacon Byron Johnson testified that he lived near the scene of the shooting on Brinton Road.  He testified that he heard gunshots on the day of the shooting and he looked out the window of his residence.  Immediately after the shooting he observed a black make walking toward his residence from what appeared to be Kay Street.  The male was wearing a red coat, a hoodie, jeans and boots.  He kept his hands in his pockets.  He walked away from the scene on Second Street.  Deacon Johnson testified that after the [Petitioner] was arrested and he saw a photograph of the [Petitioner] in the newspaper, he recognized the [Petitioner] as the person he saw on the day of the shooting.  He could not, however, identify the [Petitioner] at trial, attributing his inability to do so on the three year gap between the time he saw the [Petitioner] on the street and the time he was asked to identify the [Petitioner] in the courtroom.

2

Brian Franklin testified that on January 28, 2010, he and the [Petitioner] were cellmates in the Allegheny County Jail.  On that date, the [Petitioner] asked Franklin if police could get DNA from a Pepsi can.  FN1.  Franklin advised the [Petitioner] that he believed DNA could be obtained from the can.  The [Petitioner] then asked him whether DNA or other evidence could be obtained from a vehicle.  Franklin asked the [Petitioner] why he was asking these questions.  The [Petitioner] replied by telling Franklin that he was involved in a case.  He told Franklin that he pulled the trigger in a homicide case.  The [Petitioner] explained that the [Petitioner] had a "beef" with the victim and he wanted a fair fight with the victim.  The victim did not want to fight.  The [Petitioner] explained that he asked for a ride from the victim to pay for his cell phone bill.  The [Petitioner] basically disclosed the same events of the night of the shooting as described by Orlando Anderson.  He told Franklin about the stop at the victim's aunt's house.  According to the [Petitioner], even though he never saw the victim with a gun, he thought the victim went into the house to get a gun.  The [Petitioner] told Franklin that the vehicle came to a stop and he shot the victim because he thought the victim was going to shoot him first.  He stated that Orlando Anderson was in the back seat of the vehicle at the time of the shooting.  He stated that he got rid of the gun.  Days after the incident, the [Petitioner] begged Franklin not to tell anybody what he had told Franklin.

> FN1    Testimony at trial established that detectives had provided the [Petitioner] with a can of Pepsi while he was in custody.  After drinking the Pepsi, the [Petitioner] discarded the can and police officers removed the can from a [trash container].

(Exh. 23, ECF No. 14-1, pp.97-100.)

Based on the evidence, Petitioner was found guilty of first-degree murder and carrying a firearm without a license.[4]  On September 12, 2012, immediately following the jury's verdict, Petitioner received a mandatory life without parole sentence for first-degree murder and a consecutive three-and-a-half to seven-year sentence for carrying a firearm without a license. (Exh. 14, ECF No. 14-1, pp.57-61.)  After the trial court imposed sentence, Petitioner filed a

---

[4] This was the third time Petitioner was tried on these charges.  The first trial took place on April 25-26, 2011, and it ended in a mistrial because the jury could not reach a verdict.  The second trial took place on April 10-11, 2012, and it ended in a mistrial as a result of suppressed evidence coming into the record.  *See* ECF No. 14, pp.3-4.  After the first trial and before the second trial, the Commonwealth filed a partial *nolle prosse* requesting that the persons not to possess a firearm charge be dismissed, which was granted on May 3, 2011.  *See* ECF No. 14, p.4.

post-sentence motion claiming that the verdicts were against the weight of the evidence.  (Exh. 15, ECF No. 14-1, pp.62-68.)  Petitioner's post-sentence motion was denied on September 18, 2012.  (Exh. 16, ECF No. 14-1, p.69.)  Petitioner appealed, and the Superior Court of Pennsylvania affirmed his judgment of sentence on July 8, 2014.  (Exh. 27, ECF No. 14-1, pp.204-20.)  Petitioner then filed a petition for allowance of appeal,[5] which the Supreme Court of Pennsylvania denied on March 16, 2016.  (Exh. 38, ECF No. 14-1, p.506.)

Petitioner filed a *pro se* petition pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") on September 12, 2016.[6]  (Exh. 39, ECF No. 14-1, pp.507-719.)  Counsel was appointed for Petitioner who, on September 25, 2017, filed an amended PCRA petition on Petitioner's behalf.  (Exh. 40, ECF No. 14-1, p.720; Exh. 41, ECF No. 14-1, pp.721-32.)  The PCRA court dismissed the petition on March 20, 2018.  (Exh. 44, ECF No. 14-1, p.770.)  Petitioner appealed, and the Pennsylvania Superior Court affirmed the dismissal of PCRA relief on May 13, 2019.  (Exh. 53, ECF No. 14-1, pp.938-40.)  Petitioner filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on November 5, 2019.  (Exh. 57, ECF No. 14-1, p.995.)

Petitioner initiated these federal habeas proceedings by filing his original Petition for Writ of Habeas Corpus on July 17, 2020.[7]  (ECF No. 1.)  He filed an Amended Petition on

---

[5] Petitioner's right to file a petition for allowance of appeal *nunc pro tunc* was reinstated after the PCRA court granted him this relief on October 27, 2015.  (Exh. 33, ECF No. 14-1, pp.442.)

[6] Although the PCRA petition was not docketed until September 22, 2016, Petitioner signed and dated this petition on September 12, 2016.  *See* ECF No. 14-1, p.598.  Therefore, this is the filing date according to the prisoner mailbox rule.  *See* Houston v. Lack, 487 U.S. 266 (1988); *see also* Commonwealth v. Castro, 766 A.2d 1283, 1287 (Pa. Super. 2001) ("the date of delivery of the PCRA petition by the defendant to the proper prion authority or to a prison mailbox is considered the date of filing of the petition.") (quoting Commonwealth v. Little, 716 A.2d 1287, 1288 (Pa. Super. 1998)).

[7] This is the filing date according to the prisoner mailbox rule.  *See* FN6, *supra*.

October 15, 2020.  (ECF No. 12.)  In the Petition, Petitioner raises the following claims: (1) ineffective assistance of trial counsel for failing to request a *Kloiber*[8] instruction; (2) ineffective assistance of trial counsel for failing to request a corrupt and polluted source instruction; and (3) prosecutorial misconduct in referring to Petitioner as a "cold-blooded killer" in his closing arguments and ineffective assistance of trial counsel for failing to object to same.  Respondents filed an Answer to the Petition on October 28, 2020.  (ECF No. 14.)  The Petition is now ripe for review.[9]

### B.  Federal Habeas Standard

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, April 24, 1996 ("AEDPA"), habeas relief is only available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

An application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[8] Commonwealth v. Kloiber, 106 A.2d 820 (Pa. 1954).

[9] Respondents argue that the Petition should be dismissed as time barred.  However, upon review, it appears that Respondents calculated the statute of limitations incorrectly because they used the incorrect filing dates for Petitioner's PCRA petition and his original habeas petition filed in this case.  When calculating the statute of limitations using the correct filing dates (i.e., those governed by the prisoner mailbox rule), the Petition was timely filed.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  For purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when the state court made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground.  *See, e.g.*, Harrington v. Richter, 562 U.S. 86, 98-100 (2011); Robinson v. Beard, 762 F.3d 316, 324 (3d Cir. 2014).

The majority of federal habeas claims need only be analyzed under § 2254(d)(1), which applies to questions of law and mixed questions of law and fact.  In applying § 2254(d)(1), the federal habeas court's first task is to ascertain what law falls within the scope of the "clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1).  The phrase "clearly established," as the term is used in § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of the [United States Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 363, 412 (2000).  Thus, "clearly established Federal law" is restricted to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003).

Once the "clearly established Federal law, as determined by the Supreme Court of the United States" is ascertained, the federal habeas court must determine whether the state court's adjudication of the claim at issue was "contrary to" that law.  Williams, 529 U.S. at 404-05 (explaining that the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have independent meaning).  A state-court adjudication is "contrary to" clearly established Federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable

from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Id. at 405, 406. A "run-of-the-mill" state-court adjudication applying the correct legal rule from Supreme Court decisions to the facts of a particular case will not be "contrary to" Supreme Court precedent. Id. at 406. Thus, the issue in most federal habeas cases is whether the adjudication by the state court survives under § 2254(d)(1)'s "unreasonable application" clause.

A state court decision is an "unreasonable application" of clearly established Federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. To satisfy his burden under this provision of AEDPA's standard of review, the petitioner must do more than convince the federal habeas court that the state court's decision was incorrect. He must show that it "was objectively unreasonable." Id. at 409. This means that the petitioner must prove that the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

As the Supreme Court has noted:

…. It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *See* Lockyer, *supra*, at 75, 123 S. Ct. 1166.

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf.* Felker v. Turpin, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further.

Richter, 562 U.S. at 102.

If a petitioner is able to satisfy the requirements of § 2254(d)(1), then the state court decision is not entitled to deference under AEDPA and the federal habeas court proceeds to a de novo evaluation of the constitutional claim on the merits.  *See* Tucker v. Superintendent Graterford SCI, 677 F. App'x 768, 776 (3d Cir. 2017) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When . . . the requirement set forth in § 2254(d)(1) is satisfied[,] [a] federal court must then resolve the claim without the deference AEDPA otherwise requires.").  The Court of Appeals for the Third Circuit has explained that,

> [w]hile a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient.  That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," Williams, 529 U.S. at 389, 120 S.Ct. 1495.  *See also* Horn v. Banks, 536 U.S. 266, 272, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard").  Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred.  *See* Lafler v. Cooper, 566 U.S. 156, 174, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012).

Vickers v. Superintendent Graterford SCI, 858 F.3d 841, 848-89 (3d Cir. 2017) (internal footnote omitted).

The standard of review set forth at § 2254(d)(2) applies when a petitioner "challenges the factual basis for" the state court's "decision rejecting a claim[.]"  Burt v. Titlow, 571 U.S. 12, 18 (2013).  "[A] state court decision is based on an 'unreasonable determination of the facts' if the state court's factual findings are 'objectively unreasonable in light of the evidence presented in the state-court proceeding,' which requires review of whether there was sufficient evidence to

support the state court's factual findings." <u>Dennis v. Secretary, Pennsylvania Department of Corrections</u>, 834 F.3d 263, 281 (3d Cir. 2016) (quoting § 2254(d)(2) and citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)). "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" <u>Titlow</u>, 571 U.S. at 18 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010)); *see* <u>Rice v. Collins</u>, 546 U.S. 333, 342 (2006) (reversing court of appeals' decision because "[t]he panel majority's attempt to use a set of debatable inferences to set aside the conclusion reached by the state court does not satisfy AEDPA's requirements for granting a writ of habeas corpus."). Thus, "if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede'" the state court's adjudication. <u>Woods</u>, 558 U.S. at 301 (quoting <u>Collins</u>, 546 U.S. at 341-42).

If the state court did not adjudicate a claim on the merits, the federal habeas court must determine whether that was because the petitioner procedurally defaulted it. If the claim is not defaulted, or if the petitioner has established grounds to excuse his default, the standard of review at § 2254(d) does not apply and the habeas court reviews the claim de novo. *See*, *e.g.*, <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). However, in all cases and regardless of whether the standard of review at § 2254(d) applies, the state court's factual determinations are presumed to be correct under § 2254(e)(1) unless the petitioner rebuts that presumption by clear and convincing evidence. <u>Palmer v. Hendricks</u>, 592 F.3d 386, 392 (3d Cir. 2010); <u>Nara v. Frank</u>, 488 F.3d 187, 201 (3d Cir. 2007) ("the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d).") (citing <u>Appel</u>, 250 F.3d at 210).

### C.  <u>Exhaustion and Procedural Default</u>

9

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. This "exhaustion" requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991).  It "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal court[.]"  O'Sullivan v. Boerckel, 562 U.S. 838, 845 (1999).

In order to "exhaust" a federal constitutional claim, a state prisoner must "fairly present" it through the proper procedures in state court before he litigates the claim in a federal habeas petition.  Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citing 28 U.S.C. § 2254(b)); see also O'Sullivan, 526 U.S. at 848; Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).  This requires the state prisoner to have "invoke[d] one complete round of the State's established appellate review process[,]" in order to satisfy the exhaustion requirement.  In Pennsylvania, this means that a petitioner in a non-capital case such as this one must have first presented every federal constitutional claim raised in his federal habeas petition to the Superior Court either on direct or PCRA appeal.  See, e.g., Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

Additionally, in order to "fairly present" a claim in the state courts to satisfy the exhaustion requirement, "[b]oth the legal theory and the facts on which a federal claim rests must have been presented to the state courts."  Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986) (citing Picard v. Connor, 404 U.S. 270, 277 (1971)).  "This requires that the claim brought in federal court be the substantial equivalent of that presented to the state court."  Id.  The Third

Circuit has held that a state prisoner may "fairly present" a federal claim to state courts without specifically referencing the federal Constitution or a federal statute in four ways:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Wilkerson v. Superintendent Fayette SCI, 871 F.3d 221, 229 (3d Cir. 2017) (quoting McCandless v. Vaughn, 172 F.3d 255, 261-62 (3d Cir. 1999)).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" McCandless, 172 F.3d at 260. However, in such cases applicants are considered to have procedurally defaulted their claims. See Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012). The doctrine of procedural default, like the doctrine of exhaustion, is "grounded in concerns of comity and federalism." Coleman, 501 U.S. at 730. A Pennsylvania state prisoner in a non-capital case defaults a federal habeas claim if he: (a) failed to present it to the Superior Court and he cannot do so now because the state courts would decline to address the claims on the merits because state procedural rules (such as, for example, the PCRA's one-year statute of limitations) bar such consideration; or (b) failed to comply with a state procedural rule when he presented the claim to the state court, and for that reason the Superior Court declined to address the federal claim on the merits (often referred to as the "adequate and independent state ground doctrine"). See Rolan, 680 F.3d at 317 ("Procedural default occurs when a claim has not been fairly presented to the state courts . . . and there is no additional state remedies available to

pursue . . . or, when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule . . . .).

Federal courts may not consider procedurally defaulted claims unless "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.  To show a fundamental miscarriage of justice, a petitioner must demonstrate that he is actually innocent of the crime, McCleskey v. Zant, 499 U.S. 467, 494 (1991), by presenting "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[,]" Schlup v. Delo, 513 U.S. 298, 316 (1995).

It is more common that a petitioner will allege cause and prejudice to overcome a procedurally defaulted claim.  To show cause, a petitioner must demonstrate that "some objective factor external to the defense" prevented compliance with the state's procedural requirements.  Id. at 753 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  A factor is external to the defense if it "cannot fairly be attributed to" the prisoner.  Id.  The Supreme Court has explained:

> It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel. See Edwards v. Carpenter, 529 U.S. 466, 451 (2000).  An error amounting to constitutionally ineffective assistance is "imputed to the State" and is therefore external to the prisoner. Murray, supra, at 488.  Attorney error that does not violate the Constitution, however, is attributed to the prisoner under "well-settled principles of agency law." Coleman, supra, at 754.  It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default.

Davila v. Davis, 582 U.S. 521, 528-29 (2017).

The general rule is that, because there is no federal constitutional right to counsel in a PCRA proceeding, a petitioner cannot rely on PCRA counsel's ineffectiveness to establish the "cause" necessary to overcome the default of a federal habeas claim.  Id. at 529 (citing Coleman, 501 U.S. at 755).  In Martinez v. Ryan, 566 U.S. 1 (2012), the Supreme Court announced a narrow exception to this rule.  In relevant part, it held that in states like Pennsylvania, where the law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding,[10] a petitioner may overcome the default of a claim of trial counsel's ineffectiveness.  To do so, the petitioner must show: (1) the defaulted claim of trial counsel's ineffectiveness is "substantial" and (2) PCRA counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984) for (3) failing to raise that claim in the "initial review collateral proceeding" (meaning to the PCRA court).  Martinez, 566 U.S. at 17.  The holding in Martinez is limited to defaulted claims asserting trial counsel was ineffective.  See, e.g., Davila, 582 U.S. at 529-31.  It does not apply to any other type of defaulted claim.  Id.

If the Superior Court did not adjudicate a claim on the merits, the federal habeas court must determine whether that was because the petitioner procedurally defaulted it.  As previously stated, if the claim is not defaulted, or if the petitioner has established grounds to excuse his default, the standard of review at 28 U.S.C. § 2254(d) does not apply and the court reviews the claim de novo.  See, e.g., Appel, 250 F.3d at 210.  At the same time, the court applies de novo review only if the Superior Court did not provide an alternative adjudication on the merits.  See, e.g., Rolan, 680 F.3d at 320.

---

[10] In Pennsylvania, a defendant typically may not litigate ineffective assistance of trial counsel claims on direct appeal.  Such claims must be raised in a PCRA proceeding.  Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002) (abrogated in part on other grounds by Commonwealth v. Bradley, 261 A.3d 381 (Pa. 2021)).

Finally, the "adequate and independent state ground doctrine applies on federal habeas[,]" <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 81, 87 (1977)), insofar as federal review is barred if claims are "defaulted . . . in state court pursuant to an independent and adequate state procedural rule." <u>Coleman</u>, 501 U.S. at 750.  In other words, "[t]he procedural default doctrine prohibits federal courts from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is independent of the federal question and adequate to support the judgment." <u>Nara</u>, 488 F.3d at 199.  The requirements of "independence" and "adequacy" are distinct.  <u>Johnson v. Pinchak</u>, 392 F.3d 551, 557-59 (3d Cir. 2004).  State procedural grounds are not independent, and will not bar federal habeas relief, if the state law ground rested primarily on federal law or is so "interwoven with federal law" that it cannot be said to be independent of the merits of petitioner's federal claims.  <u>Coleman</u>, 501 U.S. at 739-40.  A state rule is "adequate" if it is "firmly established and regularly followed." <u>Johnson v. Lee</u>, 136 S. Ct. 1802, 1804 (2016) (citation omitted).  These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," and that "review is foreclosed by what may honestly be called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant." <u>Bronshtein v. Horn</u>, 404 F.3d 700, 707, 708 (3d Cir. 2005).

### D.  The *Strickland* Standard

Most of Petitioner's claims assert that trial counsel provided him with ineffective assistance.  In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court recognized that a defendant's Sixth Amendment right to the assistance of counsel for his defense entails the

right to be represented by an attorney who meets at least a minimal standard of competence.[11]
Id. at 685-87.  "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it
promises only the right to effective assistance[.]"  Titlow, 571 U.S. at 24.

Under Strickland, it is Petitioner's burden to establish that his "counsel's representation
fell below an objective standard of reasonableness."  466 U.S. at 688.  "This requires showing
that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed
by the Sixth Amendment."  Id. at 687.  The Supreme Court has emphasized that "counsel should
be 'strongly presumed to have rendered adequate assistance and made all significant decisions in
the exercise of reasonable professional judgment[.]'"  Titlow, 571 U.S. at 22 (quoting Strickland,
466 U.S. at 690); Richter, 562 U.S. at 104 ("A court considering a claim of ineffective assistance
must apply a 'strong presumption' that counsel's representation was within the 'wide range' of
reasonable professional assistance.") (quoting Strickland, 466 U.S. at 689).  Counsel cannot be
deemed ineffective for failing to raise a meritless claim.  See, e.g., Preston v. Sup't Graterford
SCI, 902 F.3d 365, 379 (3d Cir. 2018).

Strickland also requires that Petitioner demonstrate that he was prejudiced by counsel's
alleged deficient performance.  This places the burden on him to establish "that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different."  Strickland, 466 U.S. at 694.  Under Strickland, "[t]he likelihood of
a different result must be substantial, not just conceivable."  Richter, 562 U.S. at 112.

---

[11] Since the Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right certain "minimum safeguards necessary to make that appeal 'adequate and effective,'" Evitts v. Lucey, 469 U.S. 387, 392 (1985) (quoting Griffin v. Illinois, 351 U.S. 12, 20 (1956)), including the right to the effective assistance of counsel, id. at 396, the ineffective assistance of counsel standard of Strickland applies to a claim that direct appeal counsel was ineffective.  Smith v. Robbins, 528 U.S. 259, 285 (2000); United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002).

The Supreme Court in <u>Strickland</u> noted that although it had discussed the performance component of an ineffectiveness claim before the prejudice component, there is no reason for an analysis of an ineffectiveness claim to proceed in that order.  466 U.S. at 697.  If it is more efficient to dispose of an ineffectiveness claim because the petitioner failed to meet his burden of showing prejudice, a court need address only that prong of <u>Strickland</u>.  <u>Id</u>.

Pennsylvania courts typically articulate <u>Strickland</u>'s standard in three parts, while federal courts set it out in two.  The legal evaluation is the same, and the differences merely reflect a stylistic choice on the part of state courts.  *See*, *e.g.*, <u>Commonwealth. v. Mitchell</u>, 105 A.3d 1257, 1266 (Pa. 2014) ("this Court has divided [<u>Strickland</u>'s] performance component into sub-parts dealing with arguable merit and reasonable strategy.  Appellant must, therefore, show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result."); <u>Commonwealth v. Sepulveda</u>, 55 A.3d 1108, 1117-18 (Pa. 2012) ("In order to obtain relief on a claim of ineffectiveness, a PCRA petitioner must satisfy the performance and prejudice test set forth in <u>Strickland</u>[.]").

**E.   <u>Petitioner's Claims</u>**

Petitioner raises the following claims: (1) ineffective assistance of trial counsel for failing to request a *Kloiber*[12] instruction; (2) ineffective assistance of trial counsel for failing to request a corrupt and polluted source instruction; and (3) prosecutorial misconduct in referring to Petitioner as a "cold-blooded killer" in his closing arguments and ineffective assistance of trial counsel for failing to object to same.  Contrary to Respondents' position, Petitioner's first two

---

[12] <u>Commonwealth v. Kloiber</u>, 106 A.2d 820 (Pa. 1954).

claims are exhausted since they were presented in their current format to both the PCRA court and Superior Court on appeal.[13]   Petitioner's third claim, however, is procedurally defaulted.

### 1.   **Failure to Request a *Kloiber* Instruction**

Petitioner claims that his trial counsel rendered ineffective assistance of counsel because he failed to request a Kloiber instruction concerning Orlando Anderson's misidentification of Petitioner prior to the trial.  As stated above, Petitioner raised this claim in his PCRA petition and on appeal to the Superior Court from the dismissal thereof.

In Kloiber, the Supreme Court of Pennsylvania held:

> [W]here the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by failure to identify defendant on one or more prior occasions . . . the court should warn the jury that the testimony as to identity must be received with caution.

106 A.2d at 826-27 (citations omitted).  With respect to this claim, the PCRA court found as follows:

> In this case, a Kloiber instruction would not have been granted by this Court. Orlando Anderson clearly viewed Petitioner prior to, during and after the shooting and murder of the victim.  Orlando Anderson never equivocated on the identification of Petitioner and he did not have a problem identifying Petitioner in the past.  Orlando Anderson clearly identified Petitioner at trial as the person who shot and killed the victim in this case.  During his testimony at trial, Orlando Anderson advised the jury that he intentionally failed to identify Petitioner prior to trial during a photo array out of fear for his personal safety.  In considering the totality of Orlando Anderson's testimony at trial, it is clear that his identification of Petitioner was clear, unequivocal and accurate.  This Court would not have provided a Kloiber instruction at trial and trial counsel could not, therefore, have rendered deficient assistance of counsel.

---

[13] Respondents' argument is premised on the fact that Petitioner did not present these claims as federally cognizable claims to the state courts, and therefore they were addressed by the state courts as state law claims.  That is incorrect.  It is clear that Petitioner presented both claims to the state courts a federally cognizable ineffective assistance of counsel claims.  The state courts evaluated both claims under the standard for ineffective assistance of counsel (which is the same in Pennsylvania as it is in federal courts), and they found that because Petitioner was not entitled to either instruction under Pennsylvania state law, counsel did not render constitutionally deficient performance by failing to request them.

(Exh. 48, ECF No. 14-1, p.815.)  On appeal, the Superior Court adopted the PCRA court's opinion as its own and affirmed the denial of the PCRA petition for the reasons set forth therein. (Exh. 53, ECF No. 14-1, pp.938-40.)

The Superior Court's decision that Petitioner was not entitled to a <u>Kloiber</u> instruction under Pennsylvania law is a state law determination that is not subject to review by this Court. *See*, *e.g.*, <u>Priester v. Vaughn</u>, 382 F.3d 394, 402 (3d Cir. 2004); *see also* <u>Real v. Shannon</u>, 600 F.3d 302, 309-10 (3d Cir. 2010).  For this reason alone, Petitioner's claim that trial counsel was ineffective for not requesting a <u>Kloiber</u> instruction fails.  *See*, *e.g.*, <u>id</u>. (since the federal habeas court was bound by the state court's determination that the instruction given at his trial comported with state law, the petitioner cannot satisfy the <u>Strickland</u> standard).

This claim also fails because Petitioner has not met his burden imposed on him by AEDPA's standard of review at § 2254(d)(1), which is the applicable provision that applies to this Court's review of this claim.  The state court applied the correct <u>Strickland</u> analysis when it evaluated this claim.  *See* Exh. 48, ECF No. 14-1, pp.812-13, 814-15.  Thus, Petitioner cannot establish that the state court's adjudication was "contrary to" <u>Strickland</u>.  <u>Williams</u>, 529 U.S. at 406.  Nor has Petitioner shown that the state court's adjudication was an "unreasonable application of" <u>Strickland</u>, since trial counsel did not perform deficiently, and Petitioner suffered no prejudice, when counsel did not request a jury instruction that did not apply to the circumstances of his case.

Based on the above, Petitioner's claim that trial counsel was ineffective for not requesting a <u>Kloiber</u> instruction is denied because this Court is bound by the state court's state law

determination that the instruction did not apply to Petitioner's case and also because its decision

withstands review under AEDPA at § 2254(d)(1).

### 2.  <u>Failure to Request a "Corrupt and Polluted Source" Instruction</u>

Petitioner's second claim is that trial counsel rendered ineffective assistance of counsel

by failing to request a "corrupt and polluted source" instruction concerning the testimony of

Orlando Anderson.  As noted above, Petitioner raised this claim in his PCRA petition and on

appeal to the Superior Court from the dismissal thereof.

> The PCRA court found that this claim was without merit.
>
> A "corrupt and polluted source" instruction, which informs the jury that the accomplice is a corrupt and polluted source whose testimony should be viewed with great caution, is required when an accomplice's testimony implicates the defendant.  <u>Commonwealth v. Wholaver</u>, 177 A.3d 136, 165 (Pa. 2018); <u>Commonwealth v. Smith</u>, 17 A.3d 873, 906 (2011) (quoting <u>Commonwealth v. Chmiel</u>, 639 A.2d 9, 13 (1994)); <u>Commonwealth v. Collins</u>, 957 A.2d 237, 262 (Pa. Super. 2008).  Accomplice liability requires evidence that the person: (1) intended to aid or promote the substantive offense; and (2) actively participated in that offense by soliciting, aiding, or agreeing to aid the principal.  <u>Collins</u>, citing <u>Commonwealth v. Rega</u>, 933 A.2d 997, 1014 (2007), *cert*. *denied*, 552 U.S. 1316 (2008).
>
> The record in this case does not remotely establish that Orlando Anderson was an accomplice to Petitioner.  As set forth above, the trial evidence established that the petitioner acted alone when he shot and killed the victim.  There is absolutely no evidence that Orlando Anderson intended to aid or promote the murder of the victim nor was there any evidence establishing that Orlando Anderson actively participated in the murder by soliciting, aiding, or agreeing to aid the petitioner.  Because this Court would not have given the "corrupt and polluted source" instruction on this record, trial counsel could not have rendered ineffective assistance of counsel for failing to request such an instruction.

(Exh. 48, ECF No. 14-1, pp.813-14.)  On appeal, the Superior Court adopted the PCRA court's

opinion as its own and affirmed the denial of PCRA relief.  (Exh. 53, ECF No. 14-1, pp.938-40.)

Like claim one, the Superior Court's decision that Petitioner was not entitled to a corrupt

and polluted source jury instruction under Pennsylvania law is a state law determination that is

not subject to review by this Court.  *See*, *e.g.*, <u>Priester</u>, 382 F.3d at 402; *see also* <u>Real</u>, 600 F.3d at 309-10.  For this reason alone, Petitioner's claim fails.  *See*, *e.g.*, <u>id</u>. (since the federal habeas court was bound by the state court's determination that the instruction given at his trial comported with state law, the petitioner cannot satisfy the <u>Strickland</u> standard).

Additionally, and also like claim one, this claim fails because Petitioner has not met his burden imposed on him by AEDPA's standard of review at § 2254(d)(1), which is the applicable provision that applies to this Court's review of this claim.  The state court applied the correct <u>Strickland</u> analysis when it evaluated this claim.  *See* Exh. 48, ECF No. 14-1, pp.812-14.  Thus, Petitioner cannot establish that the state court's adjudication was "contrary to" <u>Strickland</u>. <u>Williams</u>, 529 U.S. at 406.  Nor has Petitioner shown that the state court's adjudication was an "unreasonable application of" <u>Strickland</u>, since trial counsel did not perform deficiently, and Petitioner suffered no prejudice, when counsel did not request a jury instruction that did not apply to the circumstances of his case.

Based on the above, Petitioner's claim that trial counsel was ineffective for not requesting a corrupt and polluted source instruction is denied because this Court is bound by the state court's state law determination that the instruction did not apply to Petitioner's case and also because its decision withstands review under AEDPA at § 2254(d)(1).

### 3.  <u>Prosecutor Misconduct/Failure to Object to the Prosecutor's Improper Closing Argument</u>

Petitioner's final claim is two parts.  He first claims that the prosecutor's characterization of him during closing argument as a "cold-blooded killer" was improper, and secondly that trial counsel was ineffective for failing to object to the comment.  As previously stated, this claim is procedurally defaulted.

Petitioner never presented the prosecutorial misconduct part of this claim to the state courts at any point in time.  And, while Petitioner did raise the ineffective assistance of counsel part of this claim in his PCRA petition, and on appeal to the Superior Court in his Statement of Errors pursuant to Pa. R.A.P. 1925(b), he did not include this claim in his appellate brief.  For that reason, the Superior Court deemed it waived pursuant to Pa. R.A.P. 2116(a).[14]  (Exh. 53, ECF No. 14-1, p.940.)

Petitioner's failure to properly raise and address the ineffectiveness claim in his appellate brief in compliance with Pa. R.A.P. 2116(a) precluded the Superior Court's review of the claim and constituted a waiver under state law.  As noted above with respect to the law governing the doctrine of procedural default, federal habeas courts are prohibited from reviewing a state court decision involving a federal question if the state court decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment.  That is the case here, Pennsylvania's rule of waiver for failing to raise an issue on appeal is "independent" of any federal law question.  *See*, *e.g.*, DiVentura v. Stepniak, No. 95-CV-0443, 1996 WL 107852, at *3 (E.D. Pa. Mar. 11, 1996) (finding that state court's application of the waiver rule is "independent" of federal law).  This state rule also qualifies as "adequate" because it was firmly established and regularly followed in non-capital cases at the time of Petitioner's PCRA appeal. *See*, *e.g.*, Commonwealth v. Poplawski, 852 A.2d 323, 326 n.3 (Pa. Super. 2004); Commonwealth v. Adrulewicz, 911 A.2d 162, 164 n.7 (Pa. Super. 2006); Commonwealth v. Jarowecki, 923 A.2d 425, 428 (Pa. Super. 2007), *reversed on other grounds*, 985 A.2d 955 (Pa. 2009).  Hence, Petitioner's waiver of this ineffectiveness claim under state law constitutes a

---

[14] Pa. R.A.P. 2116(a) mandates that an appellant must present all issues on appeal in the statement of questions involved section of his brief.

procedural default for purposes of seeking federal habeas relief.  Accordingly, both parts of claim three are procedurally defaulted and Petitioner does not appear to argue the applicability of any of the exceptions to the procedural default doctrine.

Nevertheless, a simple review of this claim reveals that it is without merit.  Prosecutorial misconduct is insufficient to overturn a conviction unless it "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974).  It is not enough to show that a prosecutor's remarks were inappropriate or even deserving of universal condemnation.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).  A reviewing court must "examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the [petitioner]."  Moore v. Morton, 255 F.3d 95, 107 (3d Cir. 2001).

Although this claim was abandoned on appeal to the Superior Court, the PCRA court did rule on this claim and concluded that the comments made by the prosecutor were not improper. It stated as follows:

> The record makes clear that the prosecutor's comment that the petitioner was a cold-blooded killer because, "that's what the evidence in this case has proved [the petitioner] to be."  The prosecutor was not infusing his own personal opinions into his argument.  On the contrary, the argument made by the prosecutor was tailored to convince the jury that Petitioner acted with "wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty" which was required to prove malice.  This Court believes that the comments were within the proper purview of closing argument and, because the "cold-blooded killer" comment was based on the evidence and tailored to the law of first degree murder, the prosecutor's comments did not prejudice the jury by forming a fixed bias and hostility toward the defendant such that the jury was prevented from weighing the evidence objectively in this case. This Court believes the verdict in this case was a true verdict.

(Exh. 48, ECF No. 14-1, pp.820-21.)

As previously stated, a prosecutor's remark must have been so prejudicial as to violate due process, and here, the prosecutor's comment did not "so infect[] the trial with unfairness" as to make Petitioner's resulting conviction a denial of due process. The comments were properly based on the evidence that was presented, and therefore Petitioner cannot demonstrate that he was prejudiced by his counsel's failure to object to them. *See*, *e.g.*, Lawrence v. Superintendent Dallas SCI, 849 F. App'x 386, 387-88 (3d Cir. 2021).

### F. Certificate of Appealability

AEDPA codified standards governing issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals form . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by the State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When a district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying this standard here,

Petitioner has not made the requisite showing.  Accordingly, the Court will not issue a certificate of appealabiliy on any of Petitioner's claims.  An appropriate Order will be entered.

      Dated: September 28, 2023.

Lisa Pupo Lenihan
United States Magistrate Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTONIO BUTLER, | ) | |
| | ) | Civil Action No. 20 – 1172 |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| MICHAEL ZAKEN, | ) | |
| | ) | |
| *Respondent*. | ) | |

## ORDER

**AND NOW**, this 28th day of September 2023;

**IT IS HEREBY ORDERED** that, for the reasons set forth in the accompanying Memorandum Opinion, the Petition for Writ of Habeas Corpus (ECF No. 12) is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment in favor of Respondents and mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure, Petitioner has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Antonio Butler
      KU-3265
      SCI Mahanoy
      301 Grey Line Drive
      Frackville, PA  17931

      Counsel for Respondents
      (*Via CM/ECF electronic mail*)

25